IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

HERMAN JACKSON                                           PLAINTIFF

V.                      NO. 2:06cv00054 JWC

MICHAEL J. ASTRUE,                               DEFENDANT
Commissioner, Social
Security Administration[1]

## MEMORANDUM OPINION AND ORDER

Plaintiff, Herman Jackson, appeals from the denial of his claims for disability insurance benefits (DIB) and supplemental security income (SSI) benefits. The decision of the Administrative Law Judge (ALJ), dated July 28, 2005, has become the final decision of the Commissioner.

Judicial review of the Commissioner's denial of benefits examines whether the decision is based on legal error, and whether the findings of fact are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If it is possible to draw two inconsistent conclusions from the evidence and one of these conclusions represents the Commissioner's findings, the Commissioner's decision must be affirmed. *Baldwin*, 349 F.3d at 555.

For the reasons that follow, the Court **reverses** the Commissioner's decision and **remands** the matter for further administrative proceedings.

---

[1] Michael J. Astrue was sworn in as the Commissioner of Social Security on February 12, 2007. He is therefore substituted for Jo Anne B. Barnhart pursuant to Fed.R.Civ.P. 25(d)(1).

**Background**

In his application documents and at the hearing before the ALJ, Plaintiff alleged inability to work since October 18, 2002, due to: back pain; a dislocated left elbow; high blood pressure; vision and eye problems from chemical exposure; dizziness, weakness and drowsiness as side-effects of his blood pressure medication; swelling in his feet due to gout; and numbness in his right arm and hand. (Tr. 52, 58, 77, 79, 147, 169-73, 175-77, 182, 185-89.) Plaintiff testified at the hearing that he was fifty-six years old and had a high school education, three years of college, and training in gasoline engine repair. (Tr. 168-69.) He has past work as a self-employed farmer and dump truck driver. (Tr. 169, 179-80.)

Under the applicable law, a claimant is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The regulations provide a five-step sequential process to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). Basically, those procedures require the ALJ to take into account whether a claimant is working, whether the claimant's physical or mental impairments are severe, whether the impairments meet or equal an impairment listed in the regulations, whether the impairments prevent a resumption of work done in the past, and whether they preclude any other type of work. *Id.*

Here, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. The ALJ next determined, at step two, that Plaintiff

2

suffered from "severe dizziness from anti-hypertensive medication," but that he did not have an impairment or combination of impairments equaling a step-three listed impairment as contained in the regulations. The ALJ next determined that Plaintiff retained the residual functional capacity (RFC) to perform a narrowed range of work-related activities on all exertional levels. After consulting with a vocational expert, the ALJ found that Plaintiff's impairment precluded his past work as a farmer, but that his past relevant work as a dump truck driver did not require work-related activities precluded by his limitations. The ALJ thus found that Plaintiff could perform his past relevant work and was not disabled, ending his analysis at step four. (Tr. 14-18.)

Plaintiff argues that the ALJ erred (1) by finding Plaintiff capable of performing his former work as a dump truck driver without evidence that it constitutes "past relevant work," (2) by failing to perform a functional analysis of Plaintiff's prior work, (3) by failing to develop evidence about Plaintiff's impairments, (4) in assessing Plaintiff's RFC, and (5) in evaluating Plaintiff's credibility. Although the Court finds that Plaintiff's first claim for relief warrants remand, all claims will be addressed.

## **Past Relevant Work**

A claimant will be found not-disabled at step four of the sequential evaluation process if he can perform his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(iv) & (f), 404.1560(b), 416.920(a)(4)(iv) & (f), 416.960(b). To be relevant, past work must have been done within the last fifteen years, lasted long enough for the person to learn to do it, and constituted "substantial gainful activity." *Id.* §§ 404.1560(b)(1), 416.960(b)(1). Work

3

that is only "off-and-on" for brief periods of time will not be considered. *Id.* §§ 404.1565(a), 416.965(a). *See Reeder v. Apfel*, 214 F.3d 984, 989 (8th Cir. 2000).

Here, the ALJ found that, even though Plaintiff experienced dizziness as a severe side-effect of his blood pressure medication, he had the RFC to function "independently, appropriately, and effectively while engaging in a narrowed range of work on all exertional levels." (Tr. 16.) The ALJ then stated that he was accepting the vocational expert's testimony that a person of Plaintiff's age, education and work history, with this RFC, "could return to his past relevant work as a dump truck driver because his dizziness only affected him when he arose from a seated position." (Tr. 17.) The ALJ continued:

> In determining claimant's capacity to perform his past relevant work, Social Security Rulings 82-62 (C.E. 1982) and 96-8p indicate that a direct comparison between Mr. Jackson's retained capacities and the physical and mental demands of [his] past relevant work should be made. The administrative law judge has done this and finds that Mr. Jackson can return to some of his past relevant work such as a dump truck driver, per V.E. testimony. The undersigned concludes, therefore, that the reasonable inference may be drawn that claimant has the remaining mental and physical capacity to return to his past relevant work. ...
>
> The Administrative Law Judge concludes that claimant held the position as a dump truck driver in the recent past; this work activity constituted substantial gainful activity; and he performed the work for a long enough time to have become proficient in it. Accordingly, since claimant can return to his past relevant work, [he] must be found "not disabled" under the provisions of 20 CFR 404.1520(f) and 416.920(f).

(Tr. 17.)

Plaintiff first argues that the ALJ erred in assuming that Plaintiff's sporadic work as a dump truck driver was performed at the level of substantial gainful activity and therefore qualifies as past relevant work.

4

The regulations set forth three alternative tests for evaluating whether self-employment constitutes substantial gainful activity:

>     (i) Test one: You have engaged in substantial gainful activity if you render services that are significant to the operation of the business and receive a substantial income from the business. ...
>
>     (ii) Test two: You have engaged in substantial gainful activity if your work activity, in terms of factors such as hours, skills, energy output, efficiency, duties, and responsibilities, is comparable to that of unimpaired individuals in your community who are in the same or similar businesses as their means of livelihood.
>
>     (iii) Test three: You have engaged in substantial gainful activity if your work activity, although not comparable to that of unimpaired individuals, is clearly worth the amount shown in § 404.1574(b)(2) [§ 416.974(b)(2)]$^2$ when considered in terms of its value to the business, or when compared to the salary that an owner would pay to an employee to do the work you are doing.

20 C.F.R. §§ 404.1575(a)(2), 416.975(a)(2).

The ALJ simply found that Plaintiff's dump truck driving "constituted substantial gainful activity." He did not reference any of the three tests or the applicable regulation, nor did he make any findings which show that they were considered. Furthermore, the record does not contain sufficient evidence demonstrating that Plaintiff performed his past work as a dump truck driver at the substantial gainful activity level.

In the "work history report" section of his application for benefits, Plaintiff identified farming as his only work from 1988 to 2002. (Tr. 67-74.) At the administrative hearing, he testified that he had "an old dump truck, a 1974 model" and "sometimes [he] could go out

---

$^2$For the years 1990 to June 1999, average monthly earnings of $500 would ordinarily show that a claimant engaged in substantial gainful activity. From July 1999 to December 2000, the amount is $700, and the amount for years after that is revised annually according to a formula prescribed by the regulations. 20 C.F.R. §§ 404.1574(b)(2), 416.974(b)(2); *see Bloch on Social Security* § 3.8 (2006).

and make a few hustles with it hauling dirt when [he] could clutch it."[3] (Tr. 175.) He also said he worked at one time for a contractor, hauling off debris. (Tr. 175, 179-80.) He said that, after he quit farming in October 2002, he was sometimes able to "take [his] dump truck and haul" but his truck was so old that "the DOT don't allow it on the road too much" and that "most of the time [he] just let it sit." (Tr. 180-81.) He said the truck could be driven, but if stopped, he would have to pay a fine. (Tr. 186.) He said that his balancing would not affect his ability to drive a dump truck, but that it would be a problem when he would have to stop at a DOT roadblock and get out and walk around. He said, "You've got to stop, you've got to get out and you've got to go around the truck with him and if you, if you don't have good balance he's going to say you're on something." (Tr. 187-88.) He also said his vision bothered him when he was driving, and that the clutch on his dump truck was hard for him to operate because it was "real stout," which would not be a problem in a truck with automatic transmission. (Tr. 175, 186-88.)

The vocational expert testified the position of dump truck driver was an unskilled position, classified at the medium exertional level, and that Plaintiff performed the job as it was generally performed in the national economy. (Tr. 191.) She said that balancing was not a physical demand for a dump truck driver, so Plaintiff would "likely be able to do that job" despite his dizziness. (Tr. 194.)

Plaintiff's earnings record shows minimal earnings since 1990 with gaps in many years (Tr. 55-56), and there was no testimony or other evidence as to the amount of income Plaintiff received from his dump truck driving or regarding the "hours, skills, energy

---

[3] He testified that operating a clutch was difficult when his feet were swollen from gout because he couldn't wear shoes. (Tr. 170-71.)

output, efficiency, duties, and responsibilities" involved in his performance of this work. Additionally, the ALJ expressly found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of October 18, 2002. (Tr. 15, 17.) In testifying about his dump truck driving, Plaintiff appears at times to be referring to the period after October 2002. (Tr. 180-81, 182-83.) That testimony, therefore, cannot be considered supportive of the ALJ's finding that the dump truck driving constituted substantial gainful activity.

Under these circumstances, the record does not contain substantial evidence to support the ALJ's step-four finding that Plaintiff can return to his past relevant work as a dump truck driver. The case must be remanded for the ALJ to apply the relevant law in evaluating whether this work amounted to substantial gainful activity and, if necessary, developing the record in that regard. If the work was not substantial gainful activity, it does not qualify as "past relevant work" and the ALJ must proceed to the fifth step of the sequential evaluation. *See Buckner v. Apfel*, 213 F.3d 1006, 1012-13 (8th Cir. 2000). Of course, Plaintiff's work activity as a dump truck driver would be relevant to any evaluation of his functional abilities and the credibility of his subjective complaints, regardless of whether it meets the technical definition of "substantial gainful activity." *See* 20 C.F.R. §§ 404.1571, 416.971 (even if work during a period of alleged disability was not substantial gainful activity, it may show that claimant is able to do more work than he actually did); *Goff v. Barnhart*, 421 F.3d 785, 792-93 (8th Cir. 2005) (claimant's ability to work in the past with alleged impairments demonstrates they are not presently disabling); *Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004) (part-time work is inconsistent with claim of disabling pain).

Plaintiff also argues that the ALJ failed to perform a functional analysis of Plaintiff's prior work as a dump truck driver as required by SSR 82-62. *See* Soc. Sec. Rul. 82-62,

1982 WL 31386 (S.S.A. 1982). The ALJ cited this ruling and made adequate findings. (Tr. 17.) If, on remand, the ALJ finds that this work qualifies as "past relevant work," he should ensure that his analysis complies with the applicable rulings and regulations. If the ALJ proceeds to step five, this point will be moot.

## Duty to Develop

Next, Plaintiff argues that his inability to pay for medical treatment has resulted in an inadequate medical record and that the ALJ erred in failing to develop the record regarding Plaintiff's alleged impairments of back pain, gout, feet swelling, vision problems, and carpal tunnel syndrome. He says the ALJ should have sought a functional assessment to assist with evaluating the effects of these impairments upon Plaintiff's abilities to perform work functions, as well as a physical examination with x-rays of his back and feet, nerve conduction tests and blood tests.

Because social security hearings are non-adversarial, the ALJ bears a responsibility to develop the record fully and fairly, independent of the claimant's burden to press his case, and even where the claimant is represented by counsel. *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004). Nevertheless, reversal or remand due to failure to develop the record is only warranted where such failure is unfair or prejudicial. *Id.* at 838-39. Furthermore, while the ALJ has a duty to ensure that the record is fully and fairly developed, this does not absolve the claimant of his responsibility under the regulations to provide evidence establishing the severity of his alleged impairments or to be used in making an RFC finding. 20 C.F.R. §§ 404.1512(c), 404.1545(a)(3), 416.912(c), 416.945(a)(3). The claimant is in the best position to provide information about his own

medical condition. *Yuckert*, 482 U.S. at 146 n.5. The claimant thus has the burden of making sure that the record contains sufficient evidence to suggest a reasonable possibility that a severe impairment exists. *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997). Where the claimant is represented by an attorney, the ALJ "should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored." *Id.*

First, Plaintiff's contention that he was financially unable to pursue further medical treatment is belied by the record. The medical records document at least twenty-four doctor visits for various conditions from January 2002 to April 2005, along with lab work. (Tr. 110-23, 126-46.) In addition, he received medical treatment at a hospital in October 2002 for the dislocation and fracture injury to his left elbow following a fall from a tractor (Tr. 98-104), and physical therapy from November 7 to November 18, 2002 (Tr. 105-09). He testified that he obtained his medications from a state clinic, where the cost was based on income. (Tr. 182.) There is no evidence that Plaintiff investigated community resources for obtaining other low-cost medical care, or that he was ever denied any medical treatment due to his poverty. *See Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004) (record showed claimant had access to free drug samples, sought medical treatment regularly, and had some medical insurance coverage); *Murphy v. Sullivan*, 953 F.2d 383, 386-87 (8th Cir. 1992).

Moreover, any inadequacies in the medical evidence do not necessitate reversal or remand based on the ALJ's failure to develop the record because the ALJ did not treat Plaintiff unfairly and gave him and his counsel ample opportunities to meet his burden of demonstrating severe impairments or a lesser RFC. Shortly after the initial denial of

Plaintiff's DIB/SSI applications, an experienced Social Security attorney, Anthony Bartels, was appointed to represent Plaintiff. (Tr. 24A.) This attorney represented Plaintiff throughout the remaining administrative steps, including the hearing (Tr. 165), and then filed this complaint for judicial review on his behalf. At the beginning of the administrative hearing, the ALJ asked counsel if there were any other medical records that they were waiting on. Counsel said no. (Tr. 166.) The ALJ said he would keep the record open if any other records needed to be gathered or if it appeared that Plaintiff needed any specialized tests or evaluations. (Tr. 166-67.) The ALJ made it clear that, if any tests or evaluations were needed, the Social Security Administration would pay for them. (Tr. 167.) The ALJ and Plaintiff's counsel then questioned Plaintiff at length about his background, his medical conditions and symptoms, his past work, his medications, his daily activities, and his physical limitations. (Tr. 168-89.) After his final questions, the ALJ asked if counsel wanted to follow up, and counsel declined. (Tr. 189.) At the close of the testimony the ALJ asked Plaintiff if he had any questions or if there was anything else he wanted to say that the ALJ or Plaintiff's attorney might have forgotten to ask about. Plaintiff said no. (Tr. 194). The ALJ then stated: "I don't get the impression there [are] any medical records out there that I need to – that aren't already in your file. I'm kind of – I've been sitting here struggling to figure out what in the world, if I send you out for testing what it would be. So I – Mr. Bartels, unless you've got some suggestions I don't know what kind of consultative exam to send him out for. Do you have any ideas?" Mr. Bartels replied, "No, I don't, Your Honor." (Tr. 194-95). The record was then closed.

At no point in the administrative proceedings before or after the hearing did Plaintiff or his counsel contend that the record was inadequate regarding any alleged impairment

or issue, that the ALJ failed to develop the record, or that additional medical records, tests or evaluations were needed. (Tr. 9-10, 34, 39, 85-88, 91-94, 160-62.) There is nothing unfair or unreasonable in expecting Plaintiff or his counsel to speak up at some point in the administrative proceedings and suggest the tests and evaluations – for which the Social Security Administration had offered to pay – that he now argues should have been performed. Indeed, his failure to do so suggests that the results of such procedures would not have been helpful to Plaintiff's application. *See Lacroix v. Barnhart*, 465 F.3d 881, 886 n.2 (8th Cir. 2006); *Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995); *Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993) (while the ALJ has a duty to develop the record fully and fairly, it is relevant that the claimant's attorney did not attempt to obtain the information missing from the record).[4]

Additionally, Plaintiff did not mention the possibility of carpal tunnel syndrome until these judicial proceedings. (*See* Tr. 137.) The ALJ is under no obligation to investigate a claim that was not presented at the time of application or offered at the hearing as a basis for disability. *Gregg v. Barnhart*, 354 F.3d 710, 713 (8th Cir. 2003).

Finally, the record as it stands contains evidence of ongoing, regular medical care which simply does not document the existence of additional disabling impairments. There is a functional evaluation by Plaintiff's treating physician, performed in March 2003, finding that Plaintiff had no physical impairment. (Tr. 110-12.) This was made when Plaintiff

---

[4]The Court recognizes that, in order to preserve an issue for judicial review, a claimant is not required to first exhaust that issue by specifically presenting it to the Appeals Council in a request for review. *Sims v. Apfel*, 530 U.S. 103, 107, 112 (2000). Nevertheless, the question here is not whether any issues have been waived, but whether counsel's action or inaction is relevant to the ALJ's duty to fully and fairly develop the record.

11

sought medical treatment for back pain and itching eyes. The record is sufficiently developed; however, "the documents and testimony simply fail to support [Plaintiff's] claims." *Kisling v. Chater*, 105 F.3d 1255, 1257 n.3 (8th Cir. 1997).

Therefore, even though the matter is being remanded for reevaluation at step four and may be updated with evidence of any further medical treatment, the ALJ has no duty to develop the record regarding any alleged impairments or any other issues.

### **Credibility**

Because the ALJ must evaluate a claimant's credibility before determining his RFC, *see Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005), Plaintiff's last claim will be discussed next.

A claimant's subjective complaints may be discounted if they are inconsistent with the evidence as a whole. *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006). The ALJ is in the best position to gauge credibility and is granted deference in that regard as long as his credibility determinations are supported by good reasons and substantial evidence. *Id.* The Social Security regulations and rulings identify a number of factors for the ALJ to consider in assessing credibility, most of which were set forth in *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984). *See* 20 C.F.R. §§ 404.1529(c), 416.929(c); Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *3, *5 (S.S.A. 1996). However, an ALJ need only acknowledge and consider these factors, and need not explicitly discuss each one. *Goff*, 421 F.3d at 791-92. Nor is an ALJ required to discuss all of the evidence submitted, and his failure to cite specific evidence does not mean that it was not considered. *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000).

Plaintiff argues that the ALJ's credibility analysis is flawed because he failed to articulate specific reasons supported by substantial evidence which undermine Plaintiff's credibility, and he failed to apply the requisite factors.

The ALJ stated that he had evaluated Plaintiff's subjective allegations utilizing the criteria of *Polaski*, SSR 96-7p and "other relevant authority." Listing the *Polaski* factors, the ALJ found that Plaintiff's testimony "was not entirely credible because it was contradictory within itself and inconsistent with the objective medical evidence and other evidence of record." (Tr. 15-16, 18.) The ALJ specifically discussed Plaintiff's testimony about the nature and extent of his various medical conditions and symptoms, his functional limitations, the side effects of his blood pressure medication, and his daily activities. (Tr. 14-15.) He found that Plaintiff's allegations regarding symptoms and limitations were not corroborated by the objective medical evidence, observing that the evidence showed Plaintiff's dislocated elbow was healed by March 2003, his hypertension was stable with prescribed medication, and he experienced dizziness from that medication when arising from a seated position. (Tr. 15.) He noted the opinion of Plaintiff's treating physician that Plaintiff did not suffer from a physical impairment, which the ALJ stated was consistent with the opinions of state agency physicians and an expert who reviewed the medical evidence. (Tr. 15-16.) He listed the medications that Plaintiff takes and found that his occupational base was eroded by adverse side effects. (Tr. 15.) The ALJ observed that Plaintiff did not appear to be in distress at the hearing. (Tr. 16.) He specifically noted the inconsistency between Plaintiff's disability questionnaire and his hearing testimony about his ability to drive. (Tr. 16.)

13

The ALJ's analysis substantively and adequately covered the relevant considerations, even though he did not specifically discuss each one in depth. Moreover, these are valid reasons for discounting credibility, and they are supported by the record. *See Travis v. Astrue*, 477 F.3d 1037, 1042 (8th Cir. 2007) (record did not support allegations of constant, unremitting pain where little medical evidence supported allegations, claimant maintained commercial driver's license, and she performed some household activities); *Pelkey v. Barnhart*, 433 F.3d 575, 578-79 (8th Cir. 2006) (ALJ's decision to discount subjective complaints was supported by absence of any medical opinion that claimant was unable to work, as well as state medical consultant's determination that he could do light work); *Goff*, 421 F.3d at 792-93 (proper to discount allegations of disabling pain due to lack of corroborating medical evidence, claimant's activity level and work record, and her failure to take prescription pain medication); *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) (evidence of effective medication resulting in relief diminishes claimant's credibility); *Harvey v. Barnhart*, 368 F.3d 1013, 1015-16 (8th Cir. 2004) (ALJ's credibility determination supported by evidence that claimant's symptoms were basically controlled or controllable, medical records did not support extent of limitations, physicians questioned claimant's credibility, and claimant's hearing testimony was inconsistent with his prior statements); *Johnson v. Apfel*, 240 F.3d 1145, 1148-49 (8th Cir. 2001) (ALJ properly based credibility determination partially on his observations of claimant's demeanor at hearing).

Additionally, the ALJ was justified in finding Plaintiff's hearing testimony to be inconsistent with his earlier report in his disability supplemental interview that he could not drive due to dizziness and drowsiness. (Tr. 76.) At the hearing, Plaintiff testified that he

14

drives a car about sixty miles a week (Tr. 179), drove fifteen miles to the hearing site (Tr. 179), drives his tractor occasionally when his feet are not swollen (Tr. 169-70), and drives his dump truck occasionally when he has no swelling and does not have to worry about the DOT (Tr. 180-181, 183). "One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record," including statements made by the claimant at each prior step of the administrative review process. Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *5 (S.S.A. 1996).

Substantial evidence supports the ALJ's credibility analysis, and it need not be revisited on remand unless deemed appropriate by the ALJ.

### **Residual Functional Capacity**

Residual functional capacity (RFC) is defined as "the most [the claimant] can still do" in a work setting "on a regular and continuing basis" despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a)(1), (b) & (c), 416.945(a)(1), (b) & (c). The ALJ bears the final responsibility for assessing a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); *see* 20 C.F.R. §§ 404.1527(e)(2), 404.1545(a)(3), 416.927(e)(2), 416.945(a)(3).

Plaintiff says the ALJ erred in finding that Plaintiff possesses the RFC to perform "a narrowed range of work-related activities on all exertional levels" (Tr. 18) while ignoring the requirements of SSR 96-8p, specifically: (1) the ALJ's decision does not address whether Plaintiff has the ability to work on a "regular and continuing basis" for eight hours a day,

five days a week, (2) the ALJ failed to consider all of Plaintiff's impairments, (3) the ALJ failed to perform a function-by-function assessment of Plaintiff's abilities, (4) the RFC determination is not supported by a treating physician's assessment of Plaintiff's abilities, and (5) the ALJ failed to accurately assess both drowsiness and dizziness as side-effects from Plaintiff's medication.

By definition, RFC is a measure of a claimant's ability to perform work on a regular and continuing basis; therefore, it was unnecessary for the ALJ to make a specific finding in this regard. *See Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003).

Next, while specific function-by-function findings are preferable, an ALJ's RFC assessment is not erroneous where the record reflects that he implicitly found no limitation in the functional areas he omitted from his RFC. *Depover v. Barnhart*, 349 F.3d 563, 567-68 (8th Cir. 2003). Here, the ALJ clearly rejected Plaintiff's subjective complaints of impairments and limitations other than those related to his dizziness, and, as stated, this determination is supported by substantial evidence in the record. It is also supported by the functional assessment of his treating physician (Tr. 111-12 [finding "no physical impairment"]), and the various state agency physicians and disability examiners who reviewed Plaintiff's medical records and his statements (Tr. 25-28, 38, 124-25, 150-52).

In addition, although finding that dizziness was the only medication side-effect that amounted to a severe impairment, the ALJ referred to "adverse side-effects" (plural) from Plaintiff's medication and noted Plaintiff's contention that he experienced "unusual fatigue" and took about five ten-minute naps each day. (Tr. 15, 77.) In his hearing testimony about the side-effects that bothered him while driving, Plaintiff did not mention drowsiness. (Tr.

187-89.)  The record thus indicates that the ALJ considered, but properly discredited, Plaintiff's allegation of drowsiness as a functional limitation.

Substantial evidence supports the ALJ's RFC assessment, and it need not be revisited on remand unless deemed appropriate by the ALJ.

## Conclusion

IT IS THEREFORE ORDERED that the Commissioner's decision is **reversed** and this matter is **remanded** to the Commissioner for further proceedings consistent with this opinion.  Specifically, the remand is for the purpose of reevaluation of Plaintiff's ability to perform past relevant work at step four of the sequential analysis, further development of the record if necessary in that regard, and, if necessary, proceeding to step five of the sequential analysis.  Substantial evidence supports the Commissioner's decision in all other respects.

This is a "sentence four" remand within the meaning of 42 U.S.C. § 405(g) and *Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

IT IS SO ORDERED this 29th day of March, 2007.

_____
UNITED STATES MAGISTRATE JUDGE